FILED
United States Court of Appeals
Tenth Circuit

December 21, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

OLIVEA MARX,

      Plaintiff - Appellant,

v.

GENERAL REVENUE
CORPORATION, an Ohio
corporation,

      Defendant - Appellee,

KEVIN COBB,

      Defendant.

No. 10-1363

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:08-CV-02243-RPM-CBS)**

David M. Larson, Colorado Springs, Colorado, for Plaintiff - Appellant.

Steven Wienczkowski (and Adam L. Plotkin of Adam L. Plotkin, P.C., with him
on the brief), Denver, Colorado, for Defendant - Appellee.

Before **KELLY**, **LUCERO**, and **GILMAN**[*], Circuit Judges.

_____

[*] The Honorable Ronald Lee Gilman, United States Circuit Court Judge,
Sixth Circuit, sitting by designation.

**KELLY**, Circuit Judge.

Plaintiff-Appellant Olivea Marx appeals from the district court's judgment in favor of Defendant-Appellee General Revenue Corporation ("GRC"). After a bench trial, the district court found no violation of the Fair Debt Collection Practices Act ("FDCPA") and awarded costs to GRC in the amount of $4,543. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Background

Ms. Marx defaulted on her student loan. In September 2008, her guarantor, EdFund, a division of the California Student Aid Commission, hired GRC to collect on the account. In October 2008, Ms. Marx sued GRC, alleging abusive and threatening phone calls in violation of the FDCPA. Aplt. App. 11-16. GRC then made an offer of judgment, which Ms. Marx did not accept. Aplt. App. 114-116. She amended her complaint in March 2009 to add a claim that GRC violated the FDCPA by sending a facsimile to her workplace that requested information about her employment status. Aplt. App. 23-31. The district court, after a one-day trial in May 2010, found that the challenged collection practices were not abusive and threatening given its view of what actually occurred. Aplt. App. 352-357. She does not appeal these findings. Instead, she contests the court's conclusion that the facsimile did not violate the FDCPA's provision

against debt-collector communications with third parties.

The facsimile was sent in September 2008 to Ms. Marx's employer as part of GRC's inquiry into Marx's eligibility for wage garnishment. When a GRC agent called Ms. Marx's employer to verify her employment status, the agent was told to make the request in writing. Aplt. App. 217-18. GRC sent its standard employment verification form. This form displays GRC's name, logo, address, and phone number, and bears an "ID" number representing GRC's internal account number for Ms. Marx. The form indicates that its purpose is to "verify [e]mployment" and to "[request] employment information"; blanks are left for the employer to fill in the individual's employment status, date of hire, corporate payroll address, and position, and to note whether the individual works full- or part-time. Aplt. App. 113.

On appeal, Ms. Marx argues that GRC violated the FDCPA by sending the facsimile and claims that the district court erred in: (1) finding that a facsimile sent by GRC did not constitute a "communication" under the FDCPA; (2) awarding GRC costs pursuant to Fed. R. Civ. P. 54(d); and (3) permitting (in the alternative) an award of costs following GRC's offer of judgment pursuant to Fed. R. Civ. P. 68.

## Discussion

A.    Whether the Facsimile Constitutes a "Communication"

Our review of the district court's factual findings is for clear error; legal conclusions are reviewed de novo.  Keys Youth Servs., Inc. v. City of Olathe, 248 F.3d 1267, 1274 (10th Cir. 2001).  We view the record in its entirety in the light most favorable to the district court's findings, accepting those findings, if plausible, even though we might have weighed the evidence differently. Anderson v. City of Bessemer, 470 U.S. 564, 573-74 (1985).

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  The law provides, among other things, that a "debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer."  15 U.S.C. § 1692c(b).  A "communication" is defined as the "conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).

The facsimile in question is not a "communication" under the FDCPA.  A third-party "communication," to be such, must indicate to the recipient that the message relates to the collection of a debt; this is simply built into the statutory definition of "communication."  This fax cannot be construed as "conveying"

- 4 -

information "regarding a debt." Nowhere does it expressly reference debt; it speaks only of "verify[ing] [e]mployment." Nor could it reasonably be construed to imply a debt. In order to substantiate the claim that the facsimile "conveys" information "regarding a debt," either "directly or indirectly," Ms. Marx had the burden of proving such a conveyance; the standard is not whether the facsimile *could have had* such an implication. No testimony shows that Ms. Marx suffered any actual harm (such as embarrassment or a denial of promotion) or that her employer was aware that the facsimile in any way concerned a default on a student loan. Aplt. App. 180-185; 199-200. Ms. Marx did not call any witnesses from her employer's office to testify as to what they inferred from the facsimile. Aplt. App. 355.

Instead, she argues that the existence of a debt was implied by the ID or account number that appeared on the facsimile; this, she claims, makes it a "communication." Aplt. Br. at 4-5. GRC, however, designed the form precisely to avoid such an implication. When asked at trial why the faxed form contained an ID number, the agent who sent it testified: "One of the first things we're taught in training is you can never imply debt to a third party. ID could be a—just an identification number to an application, or whatever. We don't ever say account when we're speaking with an authorized third party." Aplt. App. 221. GRC conceded at oral argument that if its corporate name had somehow disclosed the nature of its business, the case would different. But absent any evidentiary

- 5 -

showing that Ms. Marx's employer either knew or inferred that the facsimile involved a debt, the facsimile does not satisfy the statutory definition of a "communication." A party may seek to verify employment status (without hinting at a debt) for any number of reasons, including as part of processing a mortgage, conducting a background check before hiring, or determining eligibility for an extension of credit.

Because we find that the facsimile did not constitute a "communication" within the ambit of the FDCPA, we need not consider whether GRC violated § 1692c(b)'s prohibition against debt-collector "communicat[ions]" with third parties.

## B. Costs

The district court awarded costs pursuant to Federal Rules of Civil Procedure 54(d)(1) and 68(d). We review an award of costs for an abuse of discretion. Rodriguez v. Whiting Farms, Inc., 360 F.3d 1180, 1190 (10th Cir. 2004). Whether costs provisions even apply is a legal question reviewed de novo. Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273, 1276 (10th Cir. 2011).

### 1. Costs under Rule 54(d)

Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The FDCPA also contains a costs provision:

[I]n the case of any successful action to enforce the foregoing liability, [the defendant is liable for] the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs. 15 U.S.C. § 1692k(a)(3).

Ms. Marx argues that the "plain language of the FDCPA is clear" that "costs may only be awarded to a Defendant upon a finding that the Plaintiff brought the case in bad faith and for the purpose of harassment." Aplt. Br. at 10. We are told this is so because (1) a statute of specific effect should supersede a general one, Aplt. Br. at 10; (2) the FDCPA costs provision postdates Rule 54, Aplt. Br. at 10; and (3) the FDCPA is a "remedial" statute that ought to be construed liberally in favor of the plaintiff, a conclusion allegedly supported by passages in the Act's legislative history, Aplt. Br. at 11.

We disagree. After careful review, we hold that § 1692k(a)(3), properly construed, unambiguously provides for two cost-shifting scenarios: one for a prevailing plaintiff and the other for a prevailing defendant. When a plaintiff prevails, he or she recovers costs and reasonable attorney's fees. Anchondo v. Anderson, Crenshaw & Assocs., 616 F.3d 1098, 1107 (10th Cir. 2010). When a defendant prevails *and* the court finds that the suit was brought in bad faith and for the purpose of harassment, then (in the court's discretion) that defendant may *also* recover attorney's fees. Smith v. Argent Mortg. Co., 331 F. App'x. 549, 559 (10th Cir. 2009). This much is undisputed. The issue here is whether a

prevailing defendant can be awarded costs in a FDCPA suit without a finding that the plaintiff brought the action in bad faith and for the purpose of harassment. This requires us to consider whether § 1692k(a)(3) supersedes Rule 54(d). We hold that it does not, and that this Defendant is entitled to a recovery of costs pursuant to Rule 54(d).

In "ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988). We read the bad-faith-and-harassment provision of § 1692k(a)(3) to indicate two separate pecuniary awards for a defendant who prevails against a suit brought in bad faith and for the purpose of harassment: (1) "attorney's fees reasonable in relation to the work expended" and (2) "costs." Attorney's fees and costs are legally distinct categories of monetary allowances made to successful litigants (with different standards, as we discuss below). We are disinclined, therefore, to read the word "costs" as being subject to "reasonable in relation to." In other words, we do not read the provision as allowing attorney's fees so long as they are reasonable *in relation to* the costs incurred by the party, the construction largely argued for by GRC.

Congress has full power to statutorily supersede any or all of the Rules, but "unless the congressional intent to do so clearly appears, subsequently enacted statutes ought to be construed to harmonize with the Rules, if feasible." U.S. v.

Gustin-Bacon Div., Certainteed Prods. Corp., 426 F.2d 539, 542 (10th Cir. 1970).

Our interpretation ensures that § 1692k(a)(3) accords with the Rule 54(d) award for costs to a prevailing party. The successful-plaintiff provision also provides for the "costs" of the action, in addition to reasonable attorney's fees. But if Rule 54(d) already gives the prevailing party his costs, why bother mentioning it here? We believe § 1692k(a)(3)—in both its prevailing-plaintiff and bad-faith provisions—merely recognizes that the prevailing party is entitled to receive the costs of suit as a matter of course. Nothing in the language of the statute purports to exclude Rule 54(d) costs from being taxed and awarded in FDCPA suits.

The presumption that a prevailing party is entitled to costs is, in our legal system, a venerable one. "Costs have usually been allowed to the prevailing party, as incident to the judgment, since the statute 6 Edw. I, c. 1, § 2, and the same rule was acknowledged in the courts of the States, at the time the judicial system of the United States was organized...." Buckhannon Bd. & Care Home, Inc., v. W.V. Dep't. of Health & Human Res., 532 U.S. 598, 611 (2001) (quoting The Baltimore, 8 Wall. 377, 388 (1869)) (Scalia, J., concurring). A clear showing of legislative intent is needed before we find that Rule 54(d) is displaced by a statute.

Attorney's fees, by contrast, under the American Rule, are paid by each party. Congress has legislated exceptions for prevailing plaintiffs in actions to enforce federal rights. See, e.g., Civil Rights Attorney's Fee Awards Act, 42

U.S.C. § 1988(b) ("the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"); Fair Labor Standards Act, 29 U.S.C. § 216(b) (the "court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); Copyright Act, 17 U.S.C. § 505 ("the court may also award a reasonable attorney's fee to the prevailing party as part of the costs"); Presidential and Executive Office Accountability Act, 28 U.S.C. § 3905(a) (to "a prevailing party...the court may award attorney's fees, expert fees, and any other costs").

Other statutes (following the common law) make an exception to the American Rule for suits brought in bad faith or for purposes of vexation or harassment, or suits known to be meritless. See, e.g., 28 U.S.C. § 1875(d)(2) (awarding "reasonable attorney's fees as part of the costs" to employers who successfully defend against suits that are "frivolous, vexatious, or brought in bad faith" by employees claiming to have been punished for jury service); 15 U.S.C. § 1693m(f) (awarding attorney's fees to defendants prevailing over suits "brought in bad faith or for purposes of harassment" in suits over electronic fund transfers); 42 U.S.C. § 11113 (awarding attorney's fee to physician-defendants who defeat claims under "professional review" law that are "frivolous, unreasonable, without foundation, or in bad faith"). But that a plaintiff's bad faith should obligate him to pay his opponent's attorney's fees hardly suggests

that his good faith should relieve him of paying his opponent's *costs*. As observed in Pacheco v. Mineta, 448 F.3d 783, 794 (5th Cir. 2006):

> Every circuit to expressly address the question in a published opinion—the Fourth, Sixth, Seventh, Ninth and Tenth—has ruled that good faith, by itself, cannot defeat the operation of Rule 54(d)(1). Teague v. Bakker, 35 F.3d 978, 996 (4th Cir. 1994) ("[T]he mere fact that a suit may have been brought in good faith is alone insufficient to warrant a denial of costs in favor of a prevailing defendant"); Cherry v. Champion, 186 F.3d 442, 446 (4th Cir. 1999) ("[A] party's good faith, standing alone, is an insufficient basis for refusing to assess costs against that party."); White & White, Inc. v. American Hosp. Supply Corp., 786 F.2d 728, 731 (6th Cir. 1986) ("Good faith without more, however, is an insufficient basis for denying costs to a prevailing party"); Coyne-Delany v. Capital Development Board of Illinois, 717 F.2d 385, 390 (7th Cir. 1983) ("The losing party's good faith and proper conduct of the litigation is not enough...."); National Information Services, Inc. v. TRW, Inc., 51 F.3d 1470, 1472-73 (9th Cir. 1995), *overruled on other grounds by* Association of Mexican-American Educators v. State of California, 231 F.3d 572, 593 (9th Cir.2000) (en banc) (overruling National Information Systems but only to the extent it held that "*only* misconduct may support the denial of costs to a prevailing party"); AeroTech, Inc. v. Estes, 110 F.3d 1523, 1527 (10th Cir.1997).

The only way to relieve Ms. Marx of GRC's entitlement to costs is a legal conclusion that the FDCPA prevents the application of Rule 54(d) in this case.

The legislative history on that point, cited by Ms. Marx, is neutral at best. "When there is a conflict between portions of legislative history and the words of a statute, the words of the statute represent the constitutionally approved method of communication, and it would require 'unequivocal evidence' of legislative purpose as reflected in the legislative history to override the ordinary meaning of

the statute."  Miller v. C.I.R., 836 F.2d 1274, 1283 (10th Cir. 1988).  The FDCPA's Senate Report, in discussing the civil liability provisions, explains that "[i]n order to protect debt collectors from nuisance lawsuits, if the court finds that an action was brought by a consumer in bad faith and for harassment, the court may award the debt collector reasonable attorney's fees and costs."  S. Rep. No. 95-382, at 5 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1700.  According to Ms. Marx, this indicates Congress's intent to award costs only upon a showing of bad faith.  Yet in the subsequent "summary" of its provisions, the Report says: "Where a court finds that a suit was brought by a consumer in bad faith and for harassment, the court may award reasonable attorney's fees to the defendant."  Id. at 8; 1977 U.S.C.C.A.N. at 1702.  Putting these passages together, the legislative history could suggest that the FDCPA's costs provision is the exclusive grantor of costs in FDCPA suits—or it could suggest nothing of the sort.  In any event, our holding is that irrespective of the mention of "costs" in § 1692k(a)(3), costs can still be awarded under Rule 54(d).  The Report nowhere indicates that the FDCPA's cost provision was intended to displace this long-standing rule of civil procedure.  The fact that the FDCPA postdates Rule 54, or that the FDCPA should be construed "liberally," does not change this result.

"[A] statute which adopts an expression which has received a long and consistent judicial interpretation in similar contexts is not a likely candidate for ambiguity."  Miller, 836 F.2d at 1283.  Laws under the same title of the U.S.

Code employ variants of the language in this provision.  See, e.g., 15 U.S.C. § 1693m(f) ("On a finding by the court that an unsuccessful action under this section was brought in bad faith or for purposes of harassment, the court shall award to the defendant attorney's fees reasonable in relation to the work expended and costs."); 15 U.S.C. § 15c(d)(2) ("the court may, in its discretion, award a reasonable attorney's fee to a prevailing defendant upon a finding that the State attorney general has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"); 15 U.S.C. § 78u(h)(8) ("the court shall award the costs of the action and attorney's fees to the Commission if the presiding judge or magistrate judge finds that the customer's claims were made in bad faith"); 15 U.S.C. § 4304(a)(1) (the court shall "award to a substantially prevailing claimant the cost of suit attributable to such claim, including a reasonable attorney's fee").  Some provisions mention "costs"; some do not; some mention attorney's fees as part of the costs.  But with one exception, no circuit has found that any of these provisions displaced Rule 54(d).

The exception is Rouse v. Law Offices of Rory Clark, 603 F.3d 699 (9th Cir. 2010), heavily relied upon by Ms. Marx.  The Ninth Circuit held that a "prevailing defendant cannot be awarded costs under the FDCPA unless the plaintiff brought the action in bad faith and for the purpose of harassment."  Id. at 701.  For the reasons explained above, we do not find the holding that Rule 54(d) is superseded by the FDCPA's §1692k(a)(3) persuasive.

- 13 -

We might point out that the Ninth Circuit itself adhered to a different logic in Quan v. Computer Sciences Corp., 623 F.3d 870 (9th Cir. 2010), where it considered the question of whether Rule 54(d)(1) was "supplanted" by 29 U.S.C. § 1132(g)(1), ERISA's costs-and-attorney's-fees provision ("the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). That court held that "§ 1132(g)(1) does not plainly 'provide otherwise' than Rule 54(d)(1) for the award of costs to a prevailing party. To 'provide otherwise' than Rule 54(d)(1), the statute or rule would have to bar an award of costs to a prevailing party. Section 1132(g)(1), however, in no way precludes an award of costs to a prevailing party...." Id. at 888.

The Rouse court observed that the FDCPA is part of the larger statutory scheme of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. §§ 1601-1693r. The court compared the FDCPA cost provision to analogues under the CCPA, in particular the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, which provides, in § 1681n(c) and § 1681o(b), that upon a court's finding "that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." The court explained that, among the CCPA statutes, "only the FDCPA and the FCRA provide for prevailing defendants," and

- 14 -

concluded that since the FDCPA uses the word "costs" and the FCRA does not, Congress must have meant to "condition" an award of costs to a prevailing FDCPA defendant on a showing of "bad faith." Rouse, 603 F.3d at 706.

But in fact there is another CCPA law that delivers costs to prevailing defendants.  The Electronic Funds Transfer Act, 15 U.S.C. §§ 1693-1693r, provides, in § 1693m(f): "On a finding by the court that an unsuccessful action under this section was brought in bad faith or for purposes of harassment, the court shall award to the defendant attorney's fees reasonable in relation to the work expended and costs."  The language here as to attorney's fees and costs is identical to that of the FDCPA.  We do not find the Ninth Circuit's reliance on the distinction it drew to be persuasive.

Finally, an award of attorney's fees upon a finding that a suit was brought in bad faith and for the purpose of harassment is obviously intended to penalize a party that brings such a suit; it stands to reason that a finding of bad faith should be required by the FDCPA before an award of attorney's fees is made.  An award of costs under Rule 54(d), however, is "presumptive." Mitchell v. City of Moore, Okla., 218 F.3d 1190, 1204 (10th. Cir. 2000).  Parties are well aware of this and it is common for parties settling a case to insert the phrase "each party to bear its own costs."  Without such agreement, however, to deny a prevailing party its costs is "in the nature of a severe penalty," such that there "must be some apparent reason to penalize the prevailing party if costs are to be denied."  Klein

v. Grynberg, 44 F.3d 1497, 1507 (10th Cir. 1995). Absent some clear and specific statutory command, it does not seem proper to hold that a party should be penalized for proving that it committed no violation of law.

In sum, Rule 54(d) requires that courts award costs to the prevailing party unless a federal statute provides otherwise. We find that there is nothing in the language of §1692k(a)(3) that should prevent Rule 54(d)'s normal operation.

2.      Costs under Rule 68(d)

The district court concluded that costs were awardable pursuant to Rule 68(d). Under this rule, if a defendant makes a formal offer of settlement, and the plaintiff rejects it but later obtains a judgment less favorable than the one offered him or her, the plaintiff-offeree "must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). In November 2008, three weeks after Ms. Marx's complaint was filed, GRC made an offer of judgment of $1,500 plus Ms. Marx's costs and attorney's fees on claims where fee shifting was available. Aplt. App. 114. The offer was not accepted and lapsed by its own terms.

We agree with Ms. Marx (but for reasons different than those argued) that the court erred in awarding the prevailing defendant its costs under this rule. Rule 68 applies only where the district court enters judgment in favor of a plaintiff for an amount less than the defendant's settlement offer. Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273, 1281 (10th Cir. 2011); Delta Air Lines, Inc. v. August, 450 U.S. 346, 352 (1981) (Rule 68 "applies only to offers made by the

defendant and only to judgments obtained by the plaintiff" and is "simply inapplicable" when the defendant obtains the judgment). Nonetheless, since GRC's costs were properly awarded pursuant to Rule 54(d), the error is harmless.

C.    The Dissent

The dissent claims that we "engraft" an additional element onto the definition of "communication" when we require that the recipient of the alleged "communication" know or be able to infer that a debt is concerned. But we think such a requirement is implicit in the word "convey." To convey is to impart, to make known. If one drafts a letter full of unlawful collection threats, but never mails it, nothing is conveyed. So, too, if the "communication" is in Sanskrit. The fax here never used the words "debt," "collector," "money," "obligation," or "payment." The dissent instead relies on the account number, but what does this convey? It is a jumble of numbers, designed for internal identification purposes, the functional equivalent of a bar code. By contrast, if the employer knew the collection agency from experience, a communication could occur. Or, as in Austin v. Great Lakes Collection Bureau, 834 F.Supp. 557 (D. Conn. 1993), a plaintiff could prove a "communication" with testimony from an office secretary stating that it was "clear from the questions she asked that [the collector] was calling about a debt or judgment." Id. at 558.

The substance of the supposed infraction here is manifestly not the sort of conduct the FDCPA is meant to quell. The district court and magistrate cases

- 17 -

cited by the dissent exemplify this as well as any. In one, a collector called twenty-one times in the seven days. Ramirez v. Apex Fin. Mgmt., 567 F. Supp. 2d. 1038 (N.D. Ill. 2008). In another, an agent impersonated the debtor's brother to secure a return call. Thomas v. Consumer Adjustment Co., Inc., 579 F. Supp. 2d. 1290, 1292 (E.D. Mo. 2008). In four of the six cases the defendant never disputed that it made a "communication." Here, however, we have a single fax, innocuous, nondescript, and harmless, which GRC sent only to gather information needed to weigh a statutory right of garnishment. The ban on communicating with third parties like employers is meant to protect debtors from harassment, embarrassment, loss of job, denial of promotion. Ms. Marx, by contrast, was unable to testify that anyone at her office had any idea what the fax concerned. GRC took pains to ensure this result. Moreover, every one of the dissent's cases is a ruling on a 12(b)(6) or summary judgment motion, which means that those courts lacked precisely what we have: a trial at which the plaintiff conceded on the stand that she has no evidence that her employer suspected that the fax concerned a debt.

The dissent also argues that our reading of the term "communication" renders § 1692b(5) "superfluous." Apparently this is so because § 1692b(5) prohibits "communication" that "relates to the collection of debt" and yet we hold above that "communication" by definition *always* concerns conveying information about debt. But we only heed the statute's own definition of "communication," in

§ 1692a(2):

> The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

It may seem redundant, but if canons of construction are to be invoked, the appropriate one is that of *ex abundanti cautela* (abudance of caution), which teaches that Congress may on occasion repeat language in order to emphasize it. Fort Stewart Schools v. FLRA, 495 U.S. 641, 646 (1990).

"The canon requiring a court to give effect to each word '*if possible*'" is not absolute; it "is sometimes offset by the canon that permits a court to reject words 'as surplusage' if inadvertently inserted or if repugnant to the rest of the statute." Chickasaw Nation v. United States, 534 U.S. 84, 94 (2001) (emphasis in original) (internal quotation marks omitted) (affirming this court's interpretation of a provision in the Indian Gaming Regulatory Act even though that interpretation made the provision's incorporation of chapter 35 of the Internal Revenue Code superfluous). A court should not apply the superfluity canon unless it first determines that the term being construed is ambiguous. Lamie v. U.S. Trustee, 540 U.S. 526, 536 (2004) (holding that the plain meaning of the Bankruptcy Code's standards for awarding professional fees controlled even though such a reading made the word "attorney" in the provision at issue "surplusage").

Here, as discussed above, we believe that the statutory definition of the key

term "communication" is unambiguous. Although we concede that the plain meaning of the term renders § 1692b(5) superfluous, we decline to avoid such a result by creating an ambiguity where none exists. Simply because a "statute is awkward . . . does not make it ambiguous on the point at issue." Lamie, 540 U.S. at 534. Moreover, the dissent's assertion that information regarding a debt is "conveyed" to a third party even if the third party has no way of ascertaining that fact strikes us as totally inconsistent with, i.e., "repugnant to," the FDCPA's express purpose "to eliminate abusive debt collection practices." 15 U.S.C. § 1692(e).

Finally, with regard to the awarding of costs to GRC under Rule 54(d) of the Federal Rules of Civil Procedure, the dissent fails to acknowledge that the FDCPA's costs provision (15 U.S.C. § 1692k(a)(3)) clearly separates the awarding of costs to the prevailing party from the awarding of attorney's fees. Only the latter is linked to a finding that the action has been brought by the plaintiff in bad faith. To the extent that the dissent relies on the Ninth Circuit case of Rouse v. Law Offices of Rory Clark, 603 F.3d 699 (9th Cir. 2010), in concluding otherwise, we find Rouse's analysis unpersuasive for the reasons stated earlier. And the dissent's reliance on the Second Circuit's similar decision in Emanuel v. American Credit Exchange, 870 F.2d 805 (2d Cir. 1989), is even more unpersuasive because Emanuel's discussion on the costs issue, by the dissent's own concession, was dicta. See id. at 808-09. That "dicta" was in fact

barely that: it simply restates § 1692k(a)(3) without analysis and contains no application.

AFFIRMED.

10-1363, Marx v. General Revenue Corporation

**Lucero,** J. dissenting

In affirming the district court, the majority holds that two provisions of the Fair Debt Collection Practices Act ("FDCPA") are wholly superfluous. Such a reading violates central canons of statutory interpretation. Accordingly, I respectfully dissent.

## I

Under the FDCPA, a debt collector generally may not communicate with a consumer's employer. The act states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, <u>a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer</u>, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) (emphasis added).

As the foregoing provision indicates, third-party communications are prohibited by the FDCPA, except those that fit within a safe harbor provision. Section 1692b allows a debt collector to "communicat[e] with any person other than the consumer for the purpose of acquiring location information about the consumer." The term "location information" is limited to "a consumer's place of abode and his telephone number at such place, or his place of employment." § 1692a(7). And the safe harbor provision contains numerous other restrictions. A

debt collector may not state that a "consumer owes any debt" nor "indicate[] that the debt collector is in the debt collection business or that the communication relates to the collection of a debt." § 1692b(2), (5). A debt collector must "identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer." § 1692b(1). And a debt collector may "not communicate by post card." § 1692b(4).

Although these restrictions may appear overly-formalistic, Congress included them for a specific reason. Citing "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices," Congress enacted the FDCPA to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." § 1692(a), (e). By mandating that debt collectors hew closely to a set script, Congress barred those companies inclined to push the limit from gaining a competitive edge.

There can be no dispute that the fax at issue in this case went beyond the form Congress mandated. It included GRC's name, logo, and address, along with GRC's internal "ID" number for Marx's account. It requested the employer's address and corporate payroll address, and Marx's employment status, date of hire, full time/part time status, and the name of her position. Such questions go well beyond a request for "location information" as defined in the FDCPA.

The majority does not consider whether GRC exceeded the permissible scope of the safe harbor provision because it concludes that the fax was not a "communication." The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2). Marx's account number at GRC plainly constitutes "information regarding a debt." Id. Just as a bank account number is information regarding a bank account, a debt collection agency account number is information regarding a debt. And there can be no doubt that this information was "convey[ed]" to Marx's employer when GRC faxed it. The majority asks what the account number conveys, (see Majority Op. 16), but that is not the proper question. Instead, the issue is whether the fax conveyed information regarding a debt. It did: it conveyed the debt collection agency account number.

Although the fax at issue meets the written definition of "communication" under the FDCPA, the majority engrafts an additional element onto that definition. It holds that a "communication" must convey information regarding a debt and indicate to the recipient of the correspondence that the message relates to the collection of a debt. (See Majority Op. 5 ("[A]bsent any evidentiary showing that Ms. Marx's employer either knew or inferred that the facsimile

involved a debt, the facsimile does not satisfy the statutory definition of a 'communication.'").)[1]  But this extra requirement is not contained in the statutory text, and its addition to the FDCPA's definition of "communication" violates several rules of statutory construction.

First, the plain text of the FDCPA does not require that the recipient of a communication infer that the message relates to debt collection.  "Where statutory language is clear and unambiguous, that language is controlling and courts should not add to that language."  Pueblo of San Ildefonso v. Ridlon, 103 F.3d 936, 939 (10th Cir. 1996).  Congress selected specific language in defining "communication," and that language does not require that the recipient recognize the communication relates to debt collection.  Supplementing the definition is particularly inappropriate in this instance because the FDCPA is to "be construed

---

[1] In adding an extra condition to the statutory definition of "communication," the majority joins a handful of district courts that appear to have done the same.  See Biggs v. Credit Collections, Inc., No. CIV-07-0053, 2007 U.S. Dist. LEXIS 84793 (W.D. Okla. Nov. 15, 2007) (unpublished); Horkey v. J.V.D.B. & Assocs., Inc., 179 F. Supp. 2d 861 (N.D. Ill. 2002); Padilla v. Payco Gen. Am. Credits, Inc., 161 F. Supp. 2d 264 (S.D.N.Y. 2001); Fava v. RRI, Inc., No. 96-CV-629, 1997 U.S. Dist. LEXIS 5630 (N.D.N.Y. April 24, 1997) (unpublished).  Those cases, however, are outliers.  A majority of courts to have considered the issue have not adopted this narrowed definition.  See Shand-Pistilli v. Prof'l Account Servs., No. 10-CV-1808, 2010 U.S. Dist. LEXIS 75056  (E.D. Pa. July 26, 2010) (unpublished); Thomas v. Consumer Adjustment Co., 579 F. Supp. 2d 1290 (E.D. Mo. 2008); Ramirez v. Apex Fin. Mgmt., 567 F. Supp. 2d 1035 (N.D. Ill. 2008); Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643 (S.D.N.Y. 2006); Henderson v. Eaton, No. 01-0138, 2001 U.S. Dist. LEXIS 13243 (E.D. La. Aug. 23, 2001) (unpublished); West v. Nationwide Credit, Inc., 998 F. Supp. 642 (W.D.N.C. 1998).

- 4 -

liberally in favor of the consumer." Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002) (citation omitted). Congress explicitly specified the manner in which debt collectors may contact third parties; it is not our role to expand on the statute.

Second, the majority's interpretation contravenes the rule that if "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (quotation omitted); see also Anderson v. United Tel. Co. of Kan., 933 F.2d 1500, 1502 (10th Cir. 1991) ("[T]he legislature's use of two different terms is presumed to be intentional."). Another provision of the FDCPA contains the language the majority interlineates into the definition of "communication." The FDCPA's safe harbor provision bars a debt collector from "indicat[ing] that the debt collector is in the debt collection business or that the communication relates to the collection of a debt." § 1692b(5) (emphasis added). If Congress intended to limit communications to those messages that imply the existence of a debt, it would have used the language contained in § 1692b(5).

Third, and perhaps most importantly, the majority's construction renders § 1692b(5) superfluous. As a rule, "we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof." Astoria Fed. Sav. & Loan Ass'n

v. Solimino, 501 U.S. 104, 112 (1991) (citation omitted).  If the term "communication" refers by definition only to correspondence that implies a debt is being collected, then § 1692b(5) is entirely redundant; there would be no reason to expressly prohibit a debt collector from "indicat[ing] . . . that the communication relates to the collection of a debt," 15 U.S.C.    § 1692b(5). Several well-reasoned district court opinions have rejected the majority's interpretation on precisely this basis.  See Henderson, 2001 U.S. Dist. LEXIS 13243, at *7 ("[Section 1692b] would make no sense if defendant's argument were correct that a letter to a third party seeking location information must indicate a debt collection purpose in order to be subject to the Act."); West, 998 F. Supp. at 645 ("Because a narrow interpretation of section 1692c(b) would render other portions of the statute 'superfluous,' the court concludes that section 1692c(b) should be broadly interpreted to prohibit a debt collector, in connection with the collection of any debt, from conveying any information relating to a debt to a third party . . . ."); see also Thomas, 579 F. Supp. 2d at 1297 (noting the superfluity issue).

The majority's holding that a "communication" must indicate to the recipient that a debt exists strays from the plain text of the statute and violates several canons of statutory construction.  GRC sought more than "location information" and Marx's account number at GRC, regardless of whether it was

referred to as an "ID" number, is "information regarding a debt" that was "convey[ed]" to Marx's employer without her permission. § 1692a(2). Accordingly, the fax fits within the plain text definition of "communication" and was prohibited under the FDCPA. See § 1692c(b). The district court's contrary conclusion should be reversed.

**II**

Because I would reverse the district court, I would not reach the issue of costs. However, I disagree with the majority's conclusion with respect to Rule 54(d) as well.

Rule 54(d) permits the prevailing party in a civil action to recover costs "[u]nless a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1). The FDCPA provides otherwise. It states: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." § 1692k(a)(3).

This language is clear and unambiguous: A district court may award costs to a defendant "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment." Id. The only sensible reading of this statute is that the district court may only award costs to a defendant upon such a finding. See Youren v. Tintic Sch. Dist., 343 F.3d 1296,

1308 (10th Cir. 2003) ("Under the doctrine of <u>expressio unius est exclusio</u> <u>alterius</u>, to 'express or include one thing implies the exclusion of the other, or of the alternative.'" (quoting Black's Law Dictionary (7th ed. 1999))). To read it otherwise is to suggest Congress passed a statute permitting a cost award conditioned upon a finding of bad faith, but intended to permit cost awards without a finding of bad faith. In other words, the majority concludes again that a portion of the FDCPA is mere surplusage. <u>But see</u> <u>Astoria Fed. Sav. & Loan</u> <u>Ass'n</u>, 501 U.S. at 112.

Both the Ninth and Second Circuits have stated that § 1692k(a)(3) permits an award of costs only upon a finding of bad faith—though the latter did so in dicta. <u>See</u> <u>Rouse v. Law Offices of Rory Clark</u>, 603 F.3d 699, 701 (9th Cir. 2010) ("[A] prevailing defendant cannot be awarded costs under the FDCPA unless the plaintiff brought the action in bad faith and for the purpose of harassment."); <u>Emanuel v. Am. Credit Exch.</u>, 870 F.2d 805, 809 (2d Cir. 1989) ("[S]ection 1692k(a)(3) permits a court to award reasonable attorney's fees and costs only upon a finding that an action under this section was brought in bad faith and for the purpose of harassment." (quotation omitted)). Until today, no circuit had ruled otherwise.

The FDCPA clearly permits an award of costs against a plaintiff only upon a finding that the plaintiff brought a claim in bad faith and for the purpose of

harassment.  The district court made no such finding here.  Accordingly, its award of costs should be reversed regardless of the merits of Marx's claim.

## III

For the foregoing reasons, I respectfully dissent.