RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WILLIAM BROWN III,

            *Plaintiff-Appellant,*

    *v.*

VAN RU CREDIT CORPORATION,

            *Defendant-Appellee.*

No. 15-1323

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-12136—Victoria A. Roberts, District Judge.

Decided and Filed:  October 22, 2015

Before:  ROGERS and DONALD, Circuit Judges; ROSE, District Judge.*

_____

**COUNSEL**

**ON BRIEF:**  Gary D. Nitzkin, Travis Shackelford, MICHIGAN CONSUMER CREDIT LAWYERS, Southfield, Michigan, for Appellant.  Nicole M. Strickler, MESSER, STILP & STRICKLER, LTD., Chicago, Illinois, for Appellee.

ROGERS, J., delivered the opinion of the court in which ROSE, D.J., joined.  DONALD, J. (pp. 9–10), delivered a separate dissenting opinion.

_____

**OPINION**

_____

ROGERS, Circuit Judge.  Plaintiff Brown owed student loan debt, which he alleges Van Ru Credit Corporation was retained to collect.  A Van Ru employee left a voicemail at Brown's

---

*The Honorable Judge Thomas M. Rose, District Judge for the Southern District of Ohio, sitting by designation.

business that stated the caller's and Van Ru's names, a return number, and a reference number. The caller asked that someone from the business's payroll department return her call. Brown sued Van Ru for violations of the Fair Debt Collection Practices Act, alleging in part that the voicemail was a communication "in connection with the collection of any debt" with a third party in violation of 15 U.S.C. § 1692c(b). The district court granted Van Ru's motion for judgment on the pleadings. Brown appeals, arguing that he sufficiently pled a violation of § 1692c(b). The district court properly granted Van Ru's motion. The voicemail left at Brown's business was not a "communication" as that term is defined in the Fair Debt Collection Practices Act. A communication must "convey[] . . . information regarding a debt directly or indirectly to any person through any medium," 15 U.S.C. § 1692a(2), and the voicemail message did not convey such information. As a result, there was no violation of § 1692c(b).

The following are the facts as alleged in Brown's complaint. At all times relevant to this suit, Brown owed debt on a student loan. Van Ru Credit Corporation, a debt collection agency, twice contacted the business that Brown owns. First, in late March or early April 2014, Van Ru mailed a letter to Brown's business seeking Brown's payroll information. Brown does not allege that this letter in any way violated the Fair Debt Collection Practices Act (FDCPA) or any other law. Second, on April 14, 2014, a Van Ru employee called Brown's business and left the following voicemail in the business's "general mail box":

> Good morning, my name is Kay and I'm calling from Van Ru Credit Corporation. If someone from the payroll department can please return my phone call my phone number is (877) 419-5627 and the reference number is *****488; again my telephone number is (877) 419-5627 and reference number is *****488.

Brandon Harris, an employee at the business, heard the message and was aware that Van Ru is a debt collector. Brown's proposed amended complaint additionally alleges that Harris "is . . . aware that any personal calls received at [Brown]'s business are intended solely for [Brown]." Brown received no further communications from Van Ru, and he does not allege any further communication to Brown's business either.

Brown filed suit in federal court, alleging that Van Ru's voicemail violated two provisions of the FDCPA. First, Brown alleged that Van Ru violated 15 U.S.C. § 1692c(b) by communicating with a third party regarding Brown's debt. Second, Brown alleged that Van Ru

violated 15 U.S.C. § 1692g(a) by failing to provide required written notices after an "initial communication with a consumer." Brown also alleged claims under the Michigan Occupational Code, MCL § 339.915, and the Michigan Collection Practices Act, MCL § 445.252. Van Ru filed an answer and then, before the start of discovery, a motion for judgment on the pleadings. Brown responded, and also filed a motion to amend his complaint with the additional allegation that Harris knew that calls to Brown's business were intended for Brown. The district court granted Van Ru's motion for judgment on the pleadings and denied Brown's motion to amend his complaint as futile. The district court reasoned that because the voicemail message did not imply the existence of a debt, it was not a "communication" as defined by the FDCPA. Therefore, Brown failed to state a claim under the FDCPA. The district court declined jurisdiction over Brown's state law claims. Brown filed a motion for reconsideration, which the district court denied as not identifying a palpable defect or raising new issues.

On appeal, Brown argues that he stated a claim under 15 U.S.C. § 1692c(b), the FDCPA's prohibition on certain communications with third parties.[1]

The district court properly granted Van Ru's motion for judgment on the pleadings, because Brown failed to plead a communication by Van Ru under the FDCPA. In order to state a claim under 15 U.S.C. § 1692c(b), a plaintiff must plausibly allege, in part, that the defendant "communicate[d], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). To convey information regarding a debt, a communication must at a minimum imply the existence of a debt. Otherwise, whatever information is conveyed cannot be understood as "regarding a debt." Van Ru's voicemail message—which does little more than ask someone from Brown's business's payroll department to call back—does not do so.

---

[1]Brown also argues that the district court improperly considered allegations in and exhibits to Van Ru's answer. But we review the district court's decision *de novo. Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). Therefore, there is no need to consider this argument. Brown also half-heartedly attempts to revive his § 1692g claim in his reply brief, but this is too late. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (en banc); *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 153 (6th Cir. 1996).

Under the circumstances alleged in Brown's complaint, Van Ru's voicemail does not convey information regarding Brown's debt. An employee of Brown's business who hears this message would understand it to concern Brown's debt only in the most exceptional of circumstances. Nothing in the message even suggests that any kind of debt exists. Brown argues that the presence of the word "Credit" in "Van Ru Credit Corporation" clearly refers to debt collection. But the word "credit" refers to a category of financial activities far broader than debt collection. The other pieces of information in the voicemail—the reference number and the toll-free number to call back—only give the impression that Van Ru has some kind of business relationship with Brown's business or someone employed by Brown's business, or perhaps that Van Ru seeks to create some kind of business relationship. Finally, the fact that the voicemail asks for someone from payroll to call back suggests only that Van Ru is seeking some sort of payroll information, whether about an individual employee or the business as a whole. Taken together, these data do not imply that Brown or anyone else at his business owes debt. It is easy to see how the inquiry could instead relate to any number of other matters (such as, to take one example, a credit check) unrelated to a personal debt covered by the FDCPA. Thus while the voicemail clearly conveys information, it does not convey information regarding a debt; it does not tend to make the listener better informed about the existence or state of Brown's debt.

What information a message conveys depends partly on context, but Brown does not plead circumstances in which Van Ru's message would mean more than what the words say. A message that would seem cryptic to a third party may have a clearer import when directed to the debtor, and a message that is part of a series of communications may mean more because of what has already been said. But here, Van Ru's voicemail, which was not directed to Brown, was preceded only by a single letter that, so far as Brown pleads, did no more than inquire after Brown's payroll information. Brown does not plead that Harris or anyone else saw the letter, so it may not be appropriate to treat it as part of the context for the voicemail. Regardless, the letter only indicates that the payroll information the voicemail seeks is likely to be Brown's payroll information. It still does not create a context in which the voicemail suggests anything about Brown's debt. Therefore, the voicemail does not convey information about a debt and is not a "communication" under the FDCPA.

This application of the definition of "communication" under the FDCPA is consistent with the FDCPA's purposes, the Fair Trade Commission's commentary, and the decision of the Tenth Circuit in *Marx v. General Revenue Corp.*, 668 F.3d 1174 (10th Cir. 2011). The FDCPA aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." § 1692(a). "The ban on communicating with third parties like employers is meant to protect debtors from harassment, embarrassment, loss of job, [and] denial of promotion." *Marx*, 668 F.3d at 1183. A communication to a third party poses little threat to a debtor unless it inspires the third party to harass the debtor or else reveals potentially embarrassing or harmful information to the third party. If a debt collection agency communicates with a third party without either mentioning the debtor or revealing that the debtor owes any debt, it is hard to see how the harms that the FDCPA seeks to avoid could occur. But if the debt collector conveys information regarding the debt to a third party—informs the third party that the debt exists or provides information about the details of the debt—then the debtor may well be harmed by the spread of this information. Thus, the Senate Report on the FDCPA paraphrases the prohibition on third-party contacts as "prohibit[ing] disclosing the consumer's personal affairs to third persons" in order to avoid "invasions of privacy" and "loss of jobs." S. Rep. 95-382, at 4 (1977). This suggests that the FDCPA does not cover communications that do not refer to or imply the existence of a debt and thus do not reveal information about the debtor's debts.

The non-binding commentary of the Federal Trade Commission lends further support to this approach. In rejecting an interpretation that would categorically exclude from the definition of "communication" all communications that do not directly refer to the existence of a debt, the Commission notes that Congress intended "a common sense approach" to the definition of "communication." *Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097, 50099 (Dec. 13, 1988). Messages may imply the existence of a debt in some situations, and they are "communications" in exactly those

situations. Thus, "communication" under the FDCPA "does not include situations in which the debt collector does not convey information regarding the debt, such as . . . [a] request to a third party for information about the consumer's assets, if the debt collector does not reveal the existence of a debt." *Id.* at 50102. Here, the debt collector's request concerned income rather than assets, but it similarly did not directly or indirectly reveal the existence of Brown's debt or any information about his debt.

Finally, this approach is consistent with that adopted by the Tenth Circuit, the only other circuit to consider the definition of "communication" in § 1692a(2) as applied to a third-party communication. *Marx*, 668 F.3d at 1177–78.[2] In *Marx*, the Tenth Circuit considered a § 1692c(b) claim very similar to the one here. Marx received a fax that contained the same information as that provided by Van Ru's voicemail, with only two differences. First, the fax specifically requested employment verification and employment information, and presumably (though the court does not state this explicitly) identified the plaintiff, Marx, by name. *Id.* at 1176. Second, the debt collector's name was General Revenue Corporation ("GRC"), not Van Ru Credit Corporation, and the fax provided GRC's logo and address in addition to its name and phone number. *Id.*

The *Marx* court reasoned that the fax was not a communication: "This fax cannot be construed as 'conveying' information 'regarding a debt.' Nowhere does it expressly reference debt; it speaks only of 'verify[ing] [e]mployment.' Nor could it reasonably be construed to imply a debt." *Id.* at 1177. The requirement that, at the very least, a communication imply a debt arises from the statutory language:

> [The] requirement is implicit in the word "convey." To convey is to impart, to make known. If one drafts a letter full of unlawful collection threats, but never mails it, nothing is conveyed. So, too, if the "communication" is in Sanskrit. The fax here never used the words "debt," "collector," "money," "obligation," or "payment."

*Id.* at 1182. This reasoning is directly applicable here. Van Ru's voicemail provided less information that could relate to a debt, as it did not even mention Brown by name, and the name

---

[2]The *Marx* opinion was joined by Judge Gilman of our Circuit, sitting by designation.

"Van Ru Credit Corporation" is hardly more likely to imply the existence of a debt than "General Revenue Corporation."

While Marx was unable to show at summary judgment that the fax had actually informed any third party of her debt, this fact provides little basis for distinguishing *Marx*.[3] Brown's proposed amended complaint appears to imply that Harris believed Van Ru's voicemail was for Brown and concerned a debt. In contrast, the *Marx* court noted that "[n]o testimony shows that . . . [Marx's] employer was aware that the facsimile in any way concerned a default on a student loan." *Id.* at 1177. But this was relevant only because it bolstered the court's argument that the fax could not "*reasonably* be construed to imply a debt." *Id.* (emphasis added). That Harris may have guessed that Van Ru's voicemail related to Brown's debt does not mean that the voicemail *conveyed* this information or that it could reasonably be construed to do so. The purposes of the FDCPA are not served by taking into account conclusions drawn by third parties where debt collectors could not reasonably expect those third parties to draw such conclusions.

Finally, requiring that a communication at a minimum imply or refer to the existence of a debt is consistent with the text of the FDCPA as a whole. Some district courts and the dissent in *Marx*—though, curiously, not Brown—have argued that a narrow interpretation of the "communication" definition in § 1692a(2) would make § 1692b, or at least § 1692b(5), redundant. *See Marx*, 668 F.3d at 1186–87 (Lucero, J., dissenting); *Henderson v. Eaton*, No. 01-0138, 2001 WL 969105 at *2 (E.D. La. Aug. 23, 2001); *West v. Nationwide Credit, Inc.*, 998 F. Supp. 642, 645 (W.D.N.C. 1998); *Miller v. Prompt Recovery Servs.*, No. 5:11CV2292, 2013 WL 3200659 at *11 (N.D. Ohio June 24, 2013). Section 1692b provides a safe harbor for third-party consumer-location inquiries that, among other conditions, do not "state that [the debtor] owes any debt" or "use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of the debt." § 1692b(2), (5). The supposed anomaly is that the § 1692b exception to the limit on

---

[3]Brown also attempts to distinguish *Marx* on the ground that that case involved a communication that was "reasonably necessary to effectuate a postjudgment judicial remedy" and was thus permissible under § 1692c(b). But nothing in the opinion supports this proposition.

communications itself has an exception in § 1692b(5) that includes some things that are not communications in the first place.

The *Marx* majority's response to this concern is compelling.  The court reasoned that the definition of "communication" in § 1692a(2) was unambiguous, and so it was better to assume that in § 1692b Congress in an abundance of caution had "repeat[ed] language in order to emphasize it." *Marx*, 668 F.3d at 1183.  This interpretation is bolstered by the Senate Report on the legislation, which makes clear that § 1692b is designed to secure a particularly important class of contacts: "[T]he committee . . . recognizes the debt collector's legitimate need to seek the whereabouts of missing debtors.  Accordingly, this bill permits debt collectors to contact third persons for the purpose of obtaining the consumer's location." S. Rep. 95-382, at 4 (1977).  Clear legislative guidelines provide valuable protection for debt collectors engaging in this single, important activity.  Absent this safe harbor, debt collectors might still be subject to suit for inoffensive location inquiries when plaintiffs could allege that, because of unusual circumstances, these inquiries conveyed information regarding debts.  Even if a correct interpretation of the FDCPA absent § 1692b would preclude all such suits, § 1692b still provides certain and predictable protection from liability for an important activity that would otherwise be protected only under general statutory terms that require "common sense" to interpret.  *See Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097, 50,099 (Dec. 13, 1988).

The judgment of the district court is affirmed.

---

**DISSENT**

---

BERNICE BOUIE DONALD, Circuit Judge, dissenting.    The majority's opinion analyzes whether the voicemail message was a communication by contemplating how the employee who heard the voicemail understood it.  Conducting such an inquiry is not appropriate in this case.  The only question should have been whether the Van Ru representative conveyed information about Brown's loan to his employee.  The reference number left in the voicemail message could have been information regarding Brown's debt, or it could also have been merely the Van Ru representative's employee number.  However, due to the district court's order, Brown did not have an opportunity to, via discovery, identify the true nature of the reference number.

The Fair Debt Collection Practices Act ("FDCPA") defines a communication as a term that means the "conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C.A. § 1692a(2).  The term "regarding" is not defined by the FDCPA.  Therefore, I consult the dictionary to ascertain its definition.  *See Appoloni v. United States*, 450 F.3d 185, 199 (6th Cir. 2006) ("Where, as here, no statutory definitions exist, courts may refer to dictionary definitions for guidance in discerning the plain meaning of a statute's language") (citations omitted).  Merriam-Webster's defines regarding as a word that means "relating to something."  Merriam-Webster Online, http://www.merriam-webster.com/dictionary/regarding (last visited October 13, 2015).  Thus, the ultimate question this case presents is whether the Van Ru representative conveyed information to Brown's employee that related to his loan.

Van Ru's representative conveyed four pieces of information in the voicemail message: (1) her name, (2) the name of the company for which she worked, Van Ru Credit Corporation, (3) her work telephone number, and (4) a reference number.  The only piece of information that could relate to Brown's loan is the reference number.  *See Brody v. Genpact Servs., LLC*, 980 F. Supp. 2d 817, 820 (E.D. Mich. 2013) (holding that the name of an employer and a phone number are generic and do not refer to a debt).

Whether the reference number related to Brown's loan depends on the nature of the reference number. For example, if the reference number was Brown's loan identification number issued to him by the company that supplied his loan, then Van Ru's representative would have undoubtedly conveyed information regarding Brown's loan. The district court dismissed this case before discovery had begun. Consequently, Brown did not have the opportunity to unearth the true identity of the reference number. Until the true identity of the reference number is known, I cannot agree with the majority's determination that the voicemail did not convey "any information" regarding Brown's loan.

The majority's opinion suggests that courts should consider the knowledge of the receiver of the message when deciding whether or not it constitutes a communication under 15 U.S.C. § 1692a. Thus, what could be a communication if received by one person may not be a communication if heard by another. For example, the majority opinion proposes that the voicemail message would constitute a "communication" if heard by Brown, but not a "communication" when heard by another individual who had no reason to know of Brown's loan. Consequently, using the majority's reasoning, a different outcome would result if Brown's brother, who knew about his loan, overheard the voicemail message, but not if his sister overheard it but did not know about his loan.

In my view, either the Van Ru representative conveyed information regarding Brown's loan or she did not. Conducting that inquiry has nothing to do with evaluating what Brown's employee knew or did not know. Since the nature of the reference number has yet to be disclosed, this case was dismissed prematurely. Accordingly, I would remand to the district court to allow Brown an opportunity to conduct discovery.

For the foregoing reasons, I respectfully dissent.