(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MARX *v*. GENERAL REVENUE CORP.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 11–1175. Argued November 7, 2012—Decided February 26, 2013

Petitioner Marx filed suit, alleging that General Revenue Corporation (GRC) violated the Fair Debt Collection Practices Act (FDCPA) by harassing and falsely threatening her in order to collect on a debt. The District Court ruled against Marx and awarded GRC costs pursuant to Federal Rule of Civil Procedure (FRCP) 54(d)(1), which gives district courts discretion to award costs to prevailing defendants "[u]nless a federal statute . . . provides otherwise." Marx sought to vacate the award, arguing that the court's discretion under Rule 54(d)(1) was displaced by 15 U. S. C. §1692k(a)(3), which provides, in pertinent part, that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." The District Court rejected Marx's argument. The Tenth Circuit affirmed, in pertinent part, agreeing that costs are allowed under the Rule and concluding that nothing in the statute's text, history, or purpose indicates that it was meant to displace the Rule.

*Held*: Section §1692k(a)(3) is not contrary to, and, thus, does not displace a district court's discretion to award costs under, Rule 54(d)(1). Pp. 4–16.

(a) Rule 54(d)(1) gives courts discretion to award costs to prevailing parties, but this discretion can be displaced by a federal statute or FRCP that "provides otherwise," *i.e.,* is "contrary" to Rule 54(d)(1). Contrary to the argument of Marx and the United States, as *amicus*, language of the original 1937 version of the Rule does not suggest that any "express provision" for costs should displace Rule 54(d)(1), regardless of whether it is contrary to the Rule. Pp. 4–7.

(b) Section 1692k(a)(3)'s language and context demonstrate that

the provision is not contrary to Rule 54(d)(1).  Pp. 7–15.

(1) GRC argues that since §1692k(a)(3) does not address whether costs may be awarded in an FDCPA case brought in good faith, it does not set forth a standard that is contrary to the Rule and therefore does not displace the presumption that a court has discretion to award costs.  Marx and the United States concede that the statute does not expressly limit a court's discretion to award costs under the Rule, but argue that it does so by negative implication.  They claim that unless §1692k(a)(3) sets forth the exclusive basis on which to award costs, the phrase "and costs" would be superfluous with Rule 54(d)(1).  And the United States also argues that §1692k(a)(3)'s more specific cost statute displaces Rule 54(d)(1)'s more general rule. Pp. 7–9.

(2) The argument of Marx and the United States depends critically on whether §1692k(a)(3)'s allowance of costs creates a negative implication that costs are unavailable in any other circumstances. The *expressio unius* canon that they invoke does not apply "unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it," *Barnhart* v. *Peabody Coal Co.*, 537 U. S. 149, 168, and can be overcome by "contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion," *United States* v. *Vonn*, 535 U. S. 55, 65.  Here, context indicates that Congress did not intend §1692k(a)(3) to foreclose courts from awarding costs under the Rule.  First, under the American Rule, each litigant generally pays his own attorney's fees, but the Court has long recognized that federal courts have inherent power to award attorney's fees in a narrow set of circumstances, *e.g.*, when a party brings an action in bad faith.  The statute is thus best read as codifying a court's pre-existing authority to award both attorney's fees and costs.  Next, §1692k(a)(3)'s second sentence must be understood in light of its first, which provides an award of attorney's fees and costs, but to prevailing plaintiffs.  By adding "and costs" to the second sentence, Congress foreclosed the argument that defendants can only recover attorney's fees when plaintiffs bring an action in bad faith and removed any doubt that defendants may recover costs as well as attorney's fees in such cases.  Finally, §1692k(a)(3)'s language sharply contrasts with that of other statutes in which Congress has placed conditions on awarding costs to prevailing defendants.  See, *e.g.*, 28 U. S. C. §1928.  Pp. 9–12.

(3) Even assuming that their surplusage argument is correct, the canon against surplusage is not absolute.  First, the canon "assists only where a competing interpretation gives effect to every clause and word of a statute." *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U. S. ___, ___.  Here, no interpretation of §1692k(a)(3) gives effect to

Syllabus

every word. Second, redundancy is not unusual in statutes addressing costs. See, *e.g.*, 12 U. S. C. §2607(d)(5). Finally, the canon is strongest when an interpretation would render superfluous another part of the same statutory scheme. Because §1692k(a)(3) is not part of Rule 54(d)(1), the force of this canon is diminished. Pp. 13–14.

(4) Lastly, contrary to the United States' claim that specific cost-shifting standards displace general ones, the context of the statute indicates that Congress was simply confirming the background presumption that courts may award to defendants attorney's fees and costs when the plaintiff brings an action in bad faith. Because Marx did not bring this suit in bad faith, the specific provision is not applicable. Pp. 14–15.

668 F. 3d 1174, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, GINSBURG, BREYER, and ALITO, JJ., joined. SOTOMAYOR, J., filed a dissenting opinion, in which KAGAN, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–1175

_____

## OLIVEA MARX, PETITIONER *v.* GENERAL REVENUE CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

[February 26, 2013]

JUSTICE THOMAS delivered the opinion of the Court.

Federal Rule of Civil Procedure 54(d)(1) gives district courts discretion to award costs to prevailing defendants "[u]nless a federal statute . . . provides otherwise." The Fair Debt Collection Practices Act (FDCPA), 91 Stat. 881, 15 U. S. C. §1692k(a)(3), provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." This case presents the question whether §1692k(a)(3) "provides otherwise" than Rule 54(d)(1). We conclude that §1692k(a)(3) does not "provid[e] otherwise," and thus a district court may award costs to prevailing defendants in FDCPA cases without finding that the plaintiff brought the case in bad faith and for the purpose of harassment.

I

Petitioner Olivea Marx defaulted on a student loan guaranteed by EdFund, a division of the California Student Aid Commission. In September 2008, EdFund hired respondent General Revenue Corporation (GRC) to collect

the debt. One month later, Marx filed an FDCPA enforcement action against GRC.[1] Marx alleged that GRC had violated the FDCPA by harassing her with phone calls several times a day and falsely threatening to garnish up to 50% of her wages and to take the money she owed directly from her bank account. Shortly after the complaint was filed, GRC made an offer of judgment under Federal Rule of Civil Procedure 68 to pay Marx $1,500, plus reasonable attorney's fees and costs, to settle any claims she had against it. Marx did not respond to the offer. She subsequently amended her complaint to add a claim that GRC unlawfully sent a fax to her workplace that requested information about her employment status.

Following a 1-day bench trial, the District Court found that Marx had failed to prove any violation of the FDCPA. As the prevailing party, GRC submitted a bill of costs seeking $7,779.16 in witness fees, witness travel expenses, and deposition transcript fees. The court disallowed several items of costs and, pursuant to Federal Rule of Civil Procedure 54(d)(1), ordered Marx to pay GRC $4,543.03. Marx filed a motion to vacate the award of costs, arguing that the court lacked authority to award costs under Rules 54(d)(1) and 68(d) because 15 U. S. C. §1692k(a)(3) sets forth the exclusive basis for awarding costs in FDCPA cases.[2] Section 1692k(a)(3) provides, in relevant part: "On

———————

[1] The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices. See 15 U. S. C. §1692. The FDCPA's private-enforcement provision, §1692k, authorizes any aggrieved person to recover damages from "any debt collector who fails to comply with any provision" of the FDCPA. §1692k(a).

[2] Under Rule 68(d), if a defendant makes a settlement offer, and the plaintiff rejects it and later obtains a judgment that is less favorable than the one offered her, the plaintiff must pay the costs incurred by the defendant after the offer was made. See Fed. Rule Civ. Proc. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made").

a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Marx argued that because the court had not found that she brought the case in bad faith and for the purpose of harassment, GRC was not entitled to costs. The District Court rejected Marx's argument, concluding that §1692k(a)(3) does not displace a court's discretion to award costs under Rule 54(d)(1) and that costs should also be awarded under Rule 68(d).

The Tenth Circuit affirmed but agreed only with part of the District Court's reasoning. In particular, the court disagreed that costs were allowed under Rule 68(d). 668 F. 3d 1174, 1182 (2011). It explained that "Rule 68 applies only where the district court enters judgment in favor of a plaintiff" for less than the amount of the settlement offer and not where the plaintiff loses outright. *Ibid.* (citing *Delta Air Lines, Inc.* v. *August*, 450 U. S. 346, 352 (1981)). Because the District Court had not entered judgment in favor of Marx, the court concluded that costs were not allowed under Rule 68(d). 668 F. 3d, at 1182. Nevertheless, the court found that costs were allowed under Rule 54(d)(1), which grants district courts discretion to award costs to prevailing parties unless a federal statute or the Federal Rules of Civil Procedure provide otherwise. *Id.,* at 1178, 1182. After describing the "venerable" presumption that prevailing parties are entitled to costs, *id.,* at 1179, the court concluded that nothing in the text, history, or purpose of §1692k(a)(3) indicated that it was meant to displace Rule 54(d)(1), *id.,* at 1178–1182. Judge Lucero dissented, arguing that "[t]he only sensible reading of [§1692k(a)(3)] is that the district court may *only* award costs to a defendant" upon finding that the action was brought in bad faith and for the purpose of harassment and that to read it otherwise rendered the phrase "and

costs" superfluous. *Id.,* at 1187 (emphasis in original).

We granted certiorari, 566 U. S. ___ (2012), to resolve a conflict among the Circuits regarding whether a prevailing defendant in an FDCPA case may be awarded costs where the lawsuit was not brought in bad faith and for the purpose of harassment. Compare 668 F. 3d, at 1182 (case below), with *Rouse* v. *Law Offices of Rory Clark*, 603 F. 3d 699, 701 (CA9 2010). We now affirm the judgment of the Tenth Circuit.

## II

As in all statutory construction cases, we "'assum[e] that the ordinary meaning of [the statutory] language accurately expresses the legislative purpose.'" *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U. S. ___, ___ (2010) (slip op., at 8) (quoting *Gross* v. *FBL Financial Services, Inc.*, 557 U. S. 167, 175 (2009) (alteration in original)). In this case, we must construe both Rule 54(d)(1) and §1692k(a)(3) and assess the relationship between them.

## A

Rule 54(d)(1) is straightforward. It provides, in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."

As the Tenth Circuit correctly recognized, Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs.[3] Notwithstanding this presumption,

---

[3] Prior to the adoption of the federal rules, prevailing parties were entitled to costs as of right in actions at law while courts had discretion to award costs in equity proceedings. See *Ex parte Peterson*, 253 U. S. 300, 317–318 (1920) ("While in equity proceedings the allowance and imposition of costs is, unless controlled by statute or rule of court, a matter of discretion, it has been uniformly held that in actions at law the prevailing party is entitled to costs as of right, except in those few cases where by express statutory provision or by established principles costs are denied" (citation omitted)); *Mansfield, C. & L. M. R. Co.* v.

the word "should" makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court. See *Taniguchi* v. *Kan Pacific Saipan, Ltd.*, 566 U. S. \_\_\_, \_\_\_ (2012) (slip op., at 4) ("Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties"). Rule 54(d)(1) also makes clear, however, that this discretion can be displaced by a federal statute or a Federal Rule of Civil Procedure that "provides otherwise."

A statute "provides otherwise" than Rule 54(d)(1) if it is "contrary" to the Rule. See 10 J. Moore, Moore's Federal Practice §54.101[1][c], p. 54–159 (3d ed. 2012) (hereinafter 10 Moore's). Because the Rule grants district courts discretion to award costs, a statute is contrary to the Rule if it limits that discretion. A statute may limit a court's discretion in several ways, and it need not expressly state that it is displacing Rule 54(d)(1) to do so. For instance, a statute providing that "plaintiffs shall not be liable for costs" is contrary to Rule 54(d)(1) because it precludes a court from awarding costs to prevailing defendants. See, *e.g.,* 7 U. S. C. §18(d)(1) ("The petitioner shall not be liable for costs in the district court"). Similarly, a statute providing that plaintiffs may recover costs only under certain conditions is contrary to Rule 54(d) because it precludes a court from awarding costs to prevailing plaintiffs when those conditions have not been satisfied. See, *e.g.,* 28 U. S. C. §1928 ("[N]o costs shall be included in such judgment, unless the proper disclaimer has been filed in the United States Patent and Trademark Office").

Importantly, not all statutes that provide for costs are contrary to Rule 54(d)(1). A statute providing that "the court may award costs to the prevailing party," for exam-

---

*Swan*, 111 U. S. 379, 387 (1884) ("[B]y the long established practice and universally recognized rule of the common law, in actions at law, the prevailing party is entitled to recover a judgment for costs . . . ").

ple, is not contrary to the Rule because it does not limit a court's discretion. See 10 Moore's §54.101[1][c], at 54–159 ("A number of statutes state simply that the court may award costs in its discretion. Such a provision is not contrary to Rule 54(d)(1) and does not displace the court's discretion under the Rule").

Marx and the United States as *amicus curiae* suggest that any statute that specifically provides for costs displaces Rule 54(d)(1), regardless of whether it is contrary to the Rule. Brief for Petitioner 17; Brief for United States as *Amicus Curiae* 11–12 (hereinafter Brief for United States). The United States relies on the original 1937 version of Rule 54(d)(1), which provided, "'Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.'" *Id.,* at 12 (quoting Rule). Though the Rules Committee updated the language of Rule 54(d)(1) in 2007, the change was "stylistic only." Advisory Committee's Notes, 28 U. S. C. App., p. 734 (2006 ed., Supp. V). Accordingly, the United States asserts that any "express provision" for costs should displace Rule 54(d)(1).

We are not persuaded, however, that the original version of Rule 54(d) should be interpreted as Marx and the United States suggest. The original language was meant to ensure that Rule 54(d) did not displace existing costs provisions that were contrary to the Rule. Under the prior language, statutes that simply permitted a court to award costs did not displace the Rule. See 6 J. Moore, Moore's Federal Practice §54.71[1], p. 54–304 (2d ed. 1996) ("[W]hen permissive language is used [in a statute regarding costs] the district court may, pursuant to Rule 54(d), exercise a sound discretion relative to the allowance of costs"). Rather, statutes had to set forth a standard for awarding costs that was different from Rule 54(d)(1) in order to displace the Rule. See *Friedman* v. *Ganassi*, 853

F. 2d 207, 210 (CA3 1988) (holding that 15 U. S. C. §77k(e) is not an "express provision" under Rule 54(d) because it does not provide an "alternative standard" for awarding taxable costs). The original version of Rule 54(d) is consistent with our conclusion that a statute must be contrary to Rule 54(d)(1) in order to displace it.[4]

## B

We now turn to whether §1692k(a)(3) is contrary to Rule 54(d)(1). The language of §1692k(a)(3) and the context surrounding it persuade us that it is not.

### 1

The second sentence of §1692k(a)(3) provides: "On a finding by the court that an action under this section was

_____

[4]The dissent provides no stable definition of "provides otherwise." First, it argues that a statute "provides otherwise" if it is "different" from Rule 54(d)(1). *Post,* at 2 (opinion of SOTOMAYOR, J.). That interpretation renders the Rule meaningless because every statute is "different" insofar as it is not an exact copy of the Rule. Next, it argues that a statute "provides otherwise" if it is an "'express provision' relating to costs." *Post,* at 2–3. Under that view, a statute providing that "the court may award costs to the prevailing party" would "provide otherwise." We do not think such a statute provides otherwise—it provides "same-wise," and the treatise on which the dissent relies supports our view. See 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2670, p. 258 (3d ed. 1998 and Supp. 2012) ("[Statutes that] are permissive in character . . . are not inconsistent with the discretion given the district court by Rule 54(d)"). Finally, the dissent seems to implicitly accept that "otherwise" means "to the contrary" in the course of arguing that a doctor's instruction to take medication "'in the morning'" would supersede an instruction on the medication label to "'take [it] twice a day unless otherwise directed,'" because the patient would understand the doctor's advice to mean that he should take the medicine "once a day, each morning." *Post,* at 4. If the patient understands the doctor to mean "once a day, each morning," we agree that such advice would "provide otherwise," because the doctor's order would be "contrary" to the label's instruction. For the reasons set forth in Part II–B, however, we are not convinced that §1692k(a)(3) is "contrary" to Rule 54(d)(1).

brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."[5]

GRC contends that the statute does not address whether costs may be awarded in this case—where the plaintiff brought the case in good faith—and thus it does not set forth a standard for awarding costs that is contrary to Rule 54(d)(1). In its view, Congress intended §1692k(a)(3) to deter plaintiffs from bringing nuisance lawsuits. It, therefore, expressly provided that when plaintiffs bring an action in bad faith and for the purpose of harassment, the court may award attorney's fees and costs to the defendant. The statute does address this type of case—*i.e.,* cases in which the plaintiff brings the action in bad faith and for the purpose of harassment. But it is silent where bad faith and purpose of harassment are absent, and silence does not displace the background rule that a court has discretion to award costs.

Marx and the United States take the contrary view. They concede that the language does not expressly limit a court's discretion to award costs under Rule 54(d)(1), Brief for Petitioner 10; Brief for United States 19, but argue that it does so by negative implication. Invoking the *expressio unius* canon of statutory construction, they contend that by specifying that a court may award attorney's fees and costs when an action is brought in bad faith and for the purpose of harassment, Congress intended to preclude a court from awarding fees and costs when bad faith and purpose of harassment are absent. They further argue that unless §1692k(a)(3) sets forth the exclusive

---

[5] It is undisputed that GRC is not entitled to costs under §1692k(a)(3) because the District Court did not find that Marx brought this action in bad faith. But Rule 54(d)(1) independently authorizes district courts to award costs to prevailing parties. The question in this case is not whether costs are allowed under §1692k(a)(3) but whether §1692k(a)(3) precludes an award of costs under Rule 54(d)(1).

basis on which a court may award costs, the phrase "and costs" would be superfluous. According to this argument, Congress would have had no reason to specify that a court may award costs when a plaintiff brings an action in bad faith if it could have nevertheless awarded costs under Rule 54(d)(1). Finally, the United States argues that §1692k(a)(3) is a more specific cost statute that displaces Rule 54(d)(1)'s more general rule.

The context surrounding §1692k(a)(3) persuades us that GRC's interpretation is correct.

### 2

The argument of Marx and the United States depends critically on whether §1692k(a)(3)'s allowance of costs creates a negative implication that costs are unavailable in any other circumstances. The force of any negative implication, however, depends on context. We have long held that the *expressio unius* canon does not apply "unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it," *Barnhart* v. *Peabody Coal Co.*, 537 U. S. 149, 168 (2003), and that the canon can be overcome by "contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion," *United States* v. *Vonn*, 535 U. S. 55, 65 (2002). In this case, context persuades us that Congress did not intend §1692k(a)(3) to foreclose courts from awarding costs under Rule 54(d)(1).

First, the background presumptions governing attorney's fees and costs are a highly relevant contextual feature. As already explained, under Rule 54(d)(1) a prevailing party is entitled to recover costs from the losing party unless a federal statute, the Federal Rules of Civil Procedure, or a court order "provides otherwise." The opposite presumption exists with respect to attorney's fees. Under the "bedrock principle known as the '"American Rule,"'" "[e]ach litigant pays his own attorney's fees, win or lose,

unless a statute or contract provides otherwise." *Hardt*, 560 U. S., at ___ (slip op., at 9) (quoting *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680, 683 (1983)). Notwithstanding the American Rule, however, we have long recognized that federal courts have inherent power to award attorney's fees in a narrow set of circumstances, including when a party brings an action in bad faith. See *Chambers* v. *NASCO, Inc.*, 501 U. S. 32, 45–46 (1991) (explaining that a court has inherent power to award attorney's fees to a party whose litigation efforts directly benefit others, to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons); *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 257–259 (1975) (same).

It is undisputed that §1692k(a)(3) leaves the background rules for attorney's fees intact. The statute provides that when the plaintiff brings an action in bad faith, the court may award attorney's fees to the defendant. But, as noted, a court has inherent power to award fees based on a litigant's bad faith even without §1692k(a)(3). See *Chambers*, *supra*, at 45–46. Because §1692k(a)(3) codifies the background rule for attorney's fees, it is dubious to infer congressional intent to override the background rule with respect to costs. The statute is best read as codifying a court's pre-existing authority to award both attorney's fees and costs.[6]

Next, the second sentence of §1692k(a)(3) must be understood in light of the sentence that precedes it.[7] The

_____

[6] Indeed, had Congress intended §1692k(a)(3) to foreclose a court's discretion to award costs, it could not have chosen a more circuitous way to do so. The statute sets forth the circumstances in which a court "may" award costs. But under Marx's and the United States' view, the only consequence of the statute is to set forth the circumstances in which it may not award costs.

[7] Section 1692k(a) provides:

first sentence of §1692k(a)(3) provides that defendants who violate the FDCPA are liable for the plaintiff's attorney's fees and costs.  The second sentence of §1692k(a)(3) similarly provides that plaintiffs who bring an action in bad faith and for the purpose of harassment may be liable for the defendant's fees and costs.

If Congress had excluded "and costs" in the second sentence, plaintiffs might have argued that the expression of costs in the first sentence and the exclusion of costs in the second meant that defendants could only recover attorney's fees when plaintiffs bring an action in bad faith.  By adding "and costs" to the second sentence, Congress foreclosed that argument, thereby removing any doubt that defendants may recover costs as well as attorney's fees when plaintiffs bring suits in bad faith.  See *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 226 (2008) (explaining that a phrase is not superfluous if used to "remove . . . doubt" about an issue); *Fort Stewart Schools* v. *FLRA*, 495 U. S. 641, 646 (1990) (explaining that "technically unnecessary" examples may have been "inserted out

_____

"Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

"(1) any actual damages sustained by such person as a result of such failure;

"(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

"(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

"(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.  On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

of an abundance of caution"). The fact that there might have been a negative implication that costs are precluded, depending on whether Congress included or excluded the phrase "and costs," weighs against giving effect to any implied limitation.

Finally, the language in §1692k(a)(3) sharply contrasts with other statutes in which Congress has placed conditions on awarding costs to prevailing defendants. See, *e.g.,* 28 U. S. C. §1928 ("[N]o costs shall be included in such judgment, *unless* the proper disclaimer has been filed in the United States Patent and Trademark Office prior to the commencement of the action" (emphasis added)); 42 U. S. C. §1988(b) ("[I]n any action brought against a judicial officer . . . such officer shall not be held liable for any costs . . . *unless* such action was clearly in excess of such officer's jurisdiction" (emphasis added)).

Although Congress need not use explicit language to limit a court's discretion under Rule 54(d)(1), its use of explicit language in other statutes cautions against inferring a limitation in §1692k(a)(3). These statutes confirm that Congress knows how to limit a court's discretion under Rule 54(d)(1) when it so desires. See *Small* v. *United States*, 544 U. S. 385, 398 (2005) (THOMAS, J., dissenting) (explaining that "Congress' explicit use of [language] in other provisions shows that it specifies such restrictions when it wants to do so"). Had Congress intended the second sentence of §1692k(a)(3) to displace Rule 54(d)(1), it could have easily done so by using the word "only" before setting forth the condition "[o]n a finding by the court that an action . . . was brought in bad faith and for the purpose of harassment . . . ."[8]

––––––––

[8] Marx also suggests that §1692k(a)(3) is similar to the Pipeline Safety Act, 49 U. S. C. §60121(b), which provides: "The court may award costs to a prevailing defendant when the action is unreasonable, frivolous, or meritless." We have never had occasion to interpret §60121(b) and its interaction with Rule 54(d)(1).

3

As the above discussion suggests, we also are not persuaded by Marx's objection that our interpretation renders the phrase "and costs" superfluous. As noted, *supra,* at 11, the phrase "and costs" would not be superfluous if Congress included it to remove doubt that defendants may recover costs when plaintiffs bring suits in bad faith. But even assuming that our interpretation renders the phrase "and costs" superfluous, that would not alter our conclusion. The canon against surplusage is not an absolute rule, see *Arlington Central School Dist. Bd. of Ed.* v. *Murphy*, 548 U. S. 291, 299, n. 1 (2006) ("While it is generally presumed that statutes do not contain surplusage, instances of surplusage are not unknown"); *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253 (1992) ("Redundancies across statutes are not unusual events in drafting . . . "), and it has considerably less force in this case.

First, the canon against surplusage "assists only where a competing interpretation gives effect to every clause and word of a statute." *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 12) (internal quotation marks omitted). But, in this case, no interpretation of §1692k(a)(3) gives effect to every word. Both Marx and the United States admit that a court has inherent power to award attorney's fees to a defendant when the plaintiff brings an action in bad faith. Because there was, consequently, no need for Congress to specify that courts have this power, §1692k(a)(3) is superfluous insofar as it addresses attorney's fees. In light of this redundancy, we are not overly concerned that the reference to costs may be redundant as well.

Second, redundancy is "hardly unusual" in statutes addressing costs. See *id.,* at \_\_\_ (slip op., at 13). Numerous statutes overlap with Rule 54(d)(1). See, *e.g.,* 12 U. S. C. §2607(d)(5) ("[T]he court may award to the prevailing party the court costs of the action"); §5565(b) (2006

ed., Supp. V) ("the [Consumer Financial Protection] Bureau . . . may recover its costs in connection with prosecuting such action if [it] . . . is the prevailing party in the action"); 15 U. S. C. §6104(d) (2006 ed.) ("The court . . . may award costs of suit and reasonable fees for attorneys and expert witnesses to the prevailing party"); §7706(f)(4) ("In the case of any successful action . . . the court, in its discretion, may award the costs of the action"); §7805(b)(3) ("[T]he court may award to the prevailing party costs"); §8131(2) (2006 ed., Supp. V) ("The court may also, in its discretion, award costs and attorneys fees to the prevailing party"); 29 U. S. C. §431(c) (2006 ed.) ("The court . . . may, in its discretion . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); 42 U. S. C. §3612(p) ("[T]he court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs"); §3613(c)(2) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs"); 47 U. S. C. §551(f)(2) ("[T]he court may award . . . other litigation costs reasonably incurred").

Finally, the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme. Cf. *United States* v. *Jicarilla Apache Nation*, 564 U. S. ___, ___ (2011) (slip op., at 22) ("'As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law'" (quoting *Mackey* v. *Lanier Collection Agency & Service, Inc.*, 486 U. S. 825, 837 (1988))). Because §1692k(a)(3) is not part of Rule 54(d)(1), the force of this canon is diminished.

4

Lastly, the United States contends that §1692k(a)(3) "establishes explicit cost-shifting standards that displace Rule 54(d)(1)'s more general default standard." Brief for

United States 17; see also *EC Term of Years Trust* v. *United States*, 550 U. S. 429, 433 (2007) ("'[A] precisely drawn, detailed statute pre-empts more general remedies'" (quoting *Brown* v. *GSA*, 425 U. S. 820, 834 (1976))). Were we to accept the argument that §1692k(a)(3) has a negative implication, this argument might be persuasive. But the context of §1692k(a)(3) indicates that Congress was simply confirming the background rule that courts may award to defendants attorney's fees and costs when the plaintiff brings an action in bad faith. The statute speaks to one type of case—the case of the bad-faith and harassing plaintiff. Because Marx did not bring this suit in bad faith, this case does not "fal[l] within the ambit of the more specific provision." Brief for United States 13; see also *RadLAX Gateway Hotel, LLC* v. *Amalgamated Bank*, 566 U. S. ___, ___ (2012) (slip op., at 9) ("When the conduct at issue falls within the scope of *both* provisions, the specific presumptively governs . . ." (emphasis in original)).[9] Accordingly, this canon is inapplicable.

## III

Because we conclude that the second sentence of §1692k(a)(3) is not contrary to Rule 54(d)(1), and, thus,

————————

[9] Marx, the United States, and GRC also spar over the purpose of §1692k(a)(3). Brief for Petitioner 14–16; Brief for United States 21–28; Reply Brief 11–14; Brief for Respondent 30–43. Marx and the United States contend that Congress intended to limit a court's discretion to award costs to prevailing defendants because FDCPA plaintiffs are often poor and may be deterred from challenging unlawful debt collection practices by the possibility of being held liable for the defendant's costs. This purposive argument cannot overcome the language and context of §1692k(a)(3), but even if it could, we find it unpersuasive. Rule 54(d)(1) does not *require* courts to award costs to prevailing defendants. District courts may appropriately consider an FDCPA plaintiff's indigency in deciding whether to award costs. See *Badillo* v. *Central Steel & Wire Co.*, 717 F. 2d 1160, 1165 (CA7 1983) ("[I]t is within the discretion of the district court to consider a plaintiff's indigency in denying costs under Rule 54(d)").

does not displace a district court's discretion to award costs under the Rule, we need not address GRC's alternative argument that costs were required under Rule 68.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–1175

_____

OLIVEA MARX, PETITIONER *v.* GENERAL REVENUE
CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT

[February 26, 2013]

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN joins,
dissenting.

Federal Rule of Civil Procedure 54(d)(1) is a default
standard that grants district courts discretion to award
litigation costs to a prevailing party. This default, how-
ever, gives way when a federal statute includes a costs
provision that "provides otherwise." The Fair Debt Collection
Practices Act (FDCPA), 91 Stat. 874, 15 U. S. C. §1692
*et seq.*, contains a costs provision, §1692k(a)(3), and it
"provides otherwise." That is apparent from the statute's
plain language, which limits a court's discretion to award
costs to prevailing defendants to cases "brought in bad
faith and for the purpose of harassment." In reaching the
opposite conclusion, the Court ignores the plain meaning
of both the FDCPA and Rule 54(d)(1) and renders the
statutory language at issue in this case meaningless. I
respectfully dissent.

## I

The majority correctly recognizes, see *ante,* at 4, the
fundamental principle of statutory construction that we
begin "with the language of the statute itself." *United
States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241
(1989); *Ingalls Shipbuilding, Inc.* v. *Director, Office of
Workers' Compensation Programs*, 519 U. S. 248, 255

(1997); *Caminetti* v. *United States*, 242 U. S. 470, 485 (1917). We presume that Congress "means in a statute what it says there," *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 254 (1992), and "where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Ron Pair,* 489 U. S., at 241 (internal quotation marks omitted). This basic tenet is the appropriate starting point for interpreting both Rule 54(d)(1) and §1692k(a)(3). After invoking this principle, however, the majority casts it aside entirely in interpreting the statute and the Rule.

### A

Rule 54(d)(1) states, as relevant here, that "[u]nless a federal statute . . . provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The first question is what it means for a statute to "provid[e] otherwise" than Rule 54(d)(1).

Because the phrase "provides otherwise" is not defined in the Federal Rules of Civil Procedure, we look to its ordinary meaning. *Asgrow Seed Co.* v. *Winterboer*, 513 U. S. 179, 187 (1995). In common usage, to "provide otherwise" means to "make a . . . stipulation" that is "differen[t]." Webster's Third New International Dictionary 1598, 1827 (2002) (Webster's Third) (defining "provide" and "otherwise," respectively); see Random House Dictionary of the English Language 1372, 1556 (2d ed. 1987) (Random House) ("to arrange for or stipulate" "[i]n another manner"); 10 Oxford English Dictionary 984 (2d ed. 1989) (Oxford Dictionary); 12 *id.,* at 713 ("to stipulate" "[i]n another way . . . ; in a different manner"). This reading of the plain text is confirmed by the original 1937 codification of the Rule, which made clear that any "express provision" relating to costs in a statute is sufficient to displace

the default.[1]

Accordingly, to displace Rule 54(d)(1), a federal statute need only address costs in a way different from, but not necessarily inconsistent with, the default.[2]  The reason is straightforward.  If Congress has enacted a provision with respect to costs in a statute, there is no longer any need for the default, so it gives way.  This design of the Rule is sensible, because many statutes contain specific costs provisions.  10 Moore's Federal Practice §54.101[1][c], p. 54–160 (3d ed. 2012) (noting that such statutes "are far too numerous to list comprehensively").  Rule 54(d)(1) is therefore consistent with the canon of statutory interpretation that "a precisely drawn, detailed statute pre-empts more general remedies." *Hinck* v. *United States*, 550 U. S. 501, 506 (2007); *Crawford Fitting Co.* v. *J. T. Gibbons, Inc.*, 482 U. S. 437, 445 (1987); *United States* v. *Erika, Inc.*, 456 U. S. 201, 208 (1982).

While purporting to interpret the "ordinary meaning" of Rule 54(d)(1), *ante,* at 4, the majority immediately abandons the ordinary meaning.  The majority concludes that a statute provides otherwise for purposes of Rule 54(d)(1) only if it is "contrary" to the default.  *Ante,* at 5.  But the

—————

[1] The original codification of the Rule provided that "[e]xcept when *express provision therefor* is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." *Ante,* at 6 (quoting the Rule; emphasis added; internal quotation marks omitted).  The language in the Rule was later revised to its current form in 2007, but as the majority acknowledges, the Rules Committee indicated the changes were "'stylistic only.'" *Ibid.* (quoting Advisory Committee's Notes, 28 U. S. C. App., p. 734 (2006 ed., Supp. V)).

[2] See 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2665, p. 200 (3d ed. 1998 and Supp. 2012) (hereinafter Wright & Miller) (Rule 54 "provides that ordinarily the prevailing party shall be allowed costs other than attorney's fees unless . . . *some other provision* for costs is made by a federal statute or the civil rules" (emphasis added)).

majority does not cite even a single dictionary definition in support of that reading, despite the oft-cited principle that a definition widely reflected in dictionaries generally governs over other possible meanings.[3]  Lacking any dictionary support for its interpretation, the majority relies instead upon a treatise published nearly 60 years after the Rule's adoption.  See *ante,* 6–7 (citing 6 J. Moore, Moore's Federal Practice, p. 54–304 (2d ed. 1996)).

"Otherwise" means "different."  Webster's Third 1518; see *supra*, at 2–3. The majority's preferred term of art, "contrary," sets a higher bar; it signifies "the opposite," or "a proposition, fact, or condition *incompatible* with another."  Webster's Third 495 (emphasis added).  See also American Heritage Dictionary of the English Language 399 (5th ed. 2011) ("Opposed, as in character or purpose"); 3 Oxford Dictionary 844 ("Opposed in nature or tendency; diametrically different, extremely unlike"); Random House 442 ("[O]pposite in nature or character; diametrically or mutually opposed").

Indeed, the majority's reading does not square with the everyday meaning of "otherwise."  Consider, for example, a medication labeled with the instruction, "take twice a day unless otherwise directed."  If a doctor advises her patient to take the medicine "in the morning," the patient would understand her to mean that he should take the medicine once a day, each morning.  Although the instruction to take the medication in the morning is not incompatible with taking it twice a day—it could be taken in the evening as well—an ordinary English speaker would interpret "otherwise" to mean that the doctor's more specific in-

---

[3] See, *e.g., MCI Telecommunications Corp.* v. *American Telephone & Telegraph Co.,* 512 U. S. 218, 225 (1994) (opinion for the Court by SCALIA, J.) (rejecting the argument that an alternative definition should control the meaning of "modify" where "[v]irtually every dictionary we are aware of says that 'to modify' means to change moderately or in minor fashion").

structions entirely supersede what is printed on the bottle. Rule 54(d)(1) is just the same: Its default is supplanted whenever Congress provides more specific instructions, not only when they are diametrically opposed to it.

## B
### 1

Thus, the straightforward question in this case is whether §1692k(a)(3) implements a "different" standard with respect to costs than Rule 54(d)(1), and so "provides otherwise." As relevant, §1692k(a)(3) states: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

It is readily apparent that this provision is different from the default of Rule 54(d)(1). In §1692k(a)(3), Congress described with specificity a single circumstance in which costs may be awarded. Far from merely restating a district court's discretion to award costs, this provision imposes a prerequisite to the exercise of that discretion: a finding by the court that an action was brought in bad faith and for the purpose of harassment.

Because the text is plain, there is no need to proceed any further. Even so, relevant canons of statutory interpretation lend added support to reading §1692k(a)(3) as having a negative implication. That reading accords with the *expressio unius, exclusio alterius* canon, which instructs that when Congress includes one possibility in a statute, it excludes another by implication. See *Chevron U. S. A. Inc.* v. *Echazabal*, 536 U. S. 73, 80–81 (2002). This rule reinforces what the text makes clear. By limiting a court's discretion to award costs to cases brought in bad faith or for the purpose of harassment, Congress

foreclosed the award of costs in other circumstances.[4]

Petitioner's interpretation of the statute is also strongly favored by the rule that statutes should be read to avoid superfluity. Under this "most basic of interpretative canons, . . . '"[a] statute should be constructed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant."'" *Corley* v. *United States*, 556 U. S. 303, 314 (2009) (quoting *Hibbs* v. *Winn*, 542 U. S. 88, 101 (2004)). Respondent's reading, as it mostly acknowledges, renders the entire sentence meaningless because it reiterates powers that federal courts already possess with respect to both costs and attorney's fees. See Brief for Respondent 22–24.

The majority rejects this argument, citing the rule that this canon "'assists only where a competing interpretation gives effect to every clause and word of a statute.'" *Ante*, at 13 (quoting *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U. S. ___, ___ (2011) (slip op., at 12)). In its view, neither of the available interpretations can eliminate superfluity because the attorney's fees provision is redundant under any reading. *Ante*, at 13. But the canon against superfluity surely counsels against an interpretation that renders the entire provision at issue superfluous when a competing interpretation would at least render part of the provision meaningful. Nor does the majority's observation that redundancy is "'hardly unusual,'" *ante,* at 14, in provisions relating to costs make the canon inapplicable. While

---

[4] The majority suggests that this canon does not apply to §1692k(a)(3) because it only aids where "'it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.'" *Ante*, at 9 (quoting *Barnhart* v. *Peabody Coal Co.*, 537 U. S. 149, 168 (2003)). The best evidence of congressional intent, however, is the statutory text that Congress enacted. *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, 98 (1991). And here, the plain language of §1692k(a)(3) makes it clear that Congress meant to foreclose other possible meanings. See *supra,* at 5.

Congress sometimes drafts redundant language with respect to costs, Congress did not do so in §1692(a)(3).[5] Instead, it drafted specific language that permits a court to award costs only on the satisfaction of a condition.

Interpreting §1692k(1)(3) as having a negative implication is consistent with our construction of another statute that includes similar language. In *Cooper Industries, Inc.* v. *Aviall Services, Inc.*, 543 U. S. 157, 166 (2004) (opinion for the Court by THOMAS, J.), we considered a provision in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U. S. C. §9613(f)(1) that provided: "[a]ny person *may* seek contribution . . . *during . . . any civil action* under section 9606 of this title" (emphasis added). We rejected the argument that the word "may" indicated that "during a civil action" was one but not the exclusive circumstance in which the right of contribution was available. 543 U. S., at 166. We instead adopted the natural reading of the text, holding that a party's ability to seek contribution was limited by the phrase "during any civil action" and that contribution was only available while a lawsuit is pending. *Ibid.* The same logic applies here, because §1692k(a)(3) imposes a closely analogous condition on a court's discretion to award costs.

## 2

The first sentence of §1692k(a)(3) underscores that Congress implemented a different rule than Rule 54(d)(1). That sentence provides that a debt collector who violates the FDCPA is "liable to" a prevailing plaintiff for "the

---

[5] See, *e.g.,* 15 U. S. C. § 6104(d) (Telemarketing and Consumer Fraud and Abuse Prevention Act) ("The court . . . may award costs of suit and reasonable fees for attorneys and expert witnesses to the prevailing party"); 42 U. S. C. §3613(c)(2) (Fair Housing Act) ("In a civil action . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs"); see also 28 U. S. C. §1332(b) (failure to recover jurisdictional amount).

costs of the action, together with a reasonable attorney's
fee as determined by the court." This sentence makes a
losing defendant always liable for the "costs of the action,"
which is a clear departure from the Rule 54(d)(1) discre-
tionary default. Cf. *Taniguchi* v. *Kan Pacific Saipan, Ltd.*,
566 U. S. ___, ___ (2012) (slip op., at 4). Because Congress
deviated from Rule 54(d)(1) in the first sentence of
§1692k(a)(3), the most reasonable reading is that the
sentence that immediately follows, which states the rule
for prevailing defendants, takes a similar path.

The majority believes that its reading of the costs provi-
sion follows from the first sentence as well, but for a dif-
ferent reason. *Ante*, at 11–12. It suggests that if Congress
had not included costs in the second sentence, a plaintiff
might have been able to argue that the inclusion of costs
in the first sentence and the exclusion of costs in the
second indicated that defendants could recover only fees
when an action is brought in bad faith. The majority then
speculates that Congress included costs in the second
sentence to foreclose that argument.

The text of the previous sentence makes plain, however,
that the second sentence departs from the Rule 54(d)(1)
default, and the majority offers no evidence in support of
its supposition that Congress intended a different mean-
ing.[6] Moreover, I see no basis for invoking potential con-

_____

[6] The majority does not explain why its speculation about legislative
intent is more persuasive than the Solicitor General's view that sad-
dling potential plaintiffs with costs would undermine the FDCPA's
"'calibrated scheme'" of enforcement. Brief for United States as *Ami-
cus Curiae* 10 (quoting *Jerman* v. *Carlisle, McNellie, Rini, Kramer &
Ulrich, L. P. A.*, 559 U. S. 573, ___ (2010) (slip op., at 29)). Under the
Solicitor General's interpretation, because the recoveries in these cases
are not certain to be large, consumers may be deterred from bringing
FDCPA claims if they are faced with the risk of paying costs. See Brief
for United States 21–28. This outcome would thwart Congress's
expectation that the FDCPA was to be primarily enforced by consum-
ers. *Ibid.*

fusion or indulging in speculation to explain away the words Congress chose. *Ante*, at 11–12. Some Members of the majority have expressed doubt about the relevance of legislative history, claiming that relying upon it is analogous to "entering a crowded cocktail party and looking . . . for one's friends." *Conroy* v. *Aniskoff*, 507 U. S. 511, 519 (1993) (SCALIA, J., concurring in judgment). But speculating whole cloth about congressional intent, as the majority does, is surely more problematic. The majority is saved the trouble of having to look for its friends at the party; it simply invites them.

## II

Reduced to its essence, the majority's analysis turns on reading §1692k(a)(3) in the context of what it calls the "venerable presumption" that prevailing parties are entitled to costs. See *ante,* at 4. Even if it were appropriate to consider a background presumption rather than reading the plain text at issue, the majority's characterization of the presumption is at best incomplete.

First, the Court's suggestion that the presumption regarding costs is a "venerable" one in American law is an overstatement. *Ibid.* It is true, as the majority points out, that prior to the federal rules, "prevailing parties were entitled to costs as of right in actions at law while courts had discretion to award costs in equity proceedings." *Ante,* at 4, n. 3; see Wright & Miller §2665, at 199. But the doctrine governing costs at law carved out an important exception for statutory provisions that set forth a different rule.[7] Where there was such a statute, courts would

---

[7] See *Ex parte Peterson*, 253 U. S. 300, 318 (1920) ("[I]n actions at law the prevailing party is entitled to costs as of right . . . , *except in those few cases where by express statutory provision or established principles costs are denied*" (emphasis added)); see also *United States* v. *Treadwell*, 15 F. 532, 534 (SDNY 1883) ("[T]he prevailing party shall be entitled to costs in all cases, unless *otherwise expressly provided by law*"

simply apply it. In its assessment of the background principles underlying its approach, the majority glosses over the longstanding expectation that Congress often enacts different rules with respect to costs, and when it does, these rules govern.

Second, Rule 54(d)(1) embraces this long-recognized exception because it specifies that a statute can displace its default rule. To repeat, Rule 54(d)(1) merely enacts a default standard that applies unless, among other things, a statute or rule "provides otherwise." Here, for the reasons explained, Congress enacted exactly such a statute. That is clear from the text, because §1692k(a)(3) conditions the award of costs on the satisfaction of a condition, and because the previous sentence of the same provision breaks from the default.

\*      \*      \*

The plain text of Rule 54(d)(1) and §1692k(a)(3) dictates the result in this case. Accordingly, I would reverse the Tenth Circuit and hold that §1692k(a)(3) "provides otherwise" than Rule 54(d)(1), such that a district court cannot award costs to a prevailing defendant in an FDCPA action except upon a showing that the action was brought in bad faith and for the purpose of harassment. I respectfully dissent.

———————

(emphasis added, internal quotation marks omitted)); Payne, Costs in Common Law Actions in the Federal Courts, 21 Va. L. Rev. 397, 430 (1934) ("By reason of the numerous changes in the acts of Congress respecting costs, many of the older cases are not now safe precedents. Care should be exercised, therefore, to make an intelligent use of the cases decided prior to the enactment of various statutes").